UNITED STATES, Appellee,

v.

Steve R. HESSLER, Private, U. S. Army, Appellant.

No. 31,788.
SPCM 10427.

U. S. Court of Military Appeals.

May 7, 1979.

Appearances: For Appellant—*Captain Jacob J. Holeman* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims, Major Carlos A. Vallecillo* (on brief); *Colonel Robert B. Clarke, Captain Demmon F. Canner.*

For Appellee—*Captain Glen D. Lause* (argued); *Lieutenant Colonel R. R. Boller, Captain Douglas P. Franklin* (on brief); *Colonel Thomas H. Davis.*

For Amicus Curiae—*Lieutenant Lawrence W. Muschamp,* JAGC, USN (Appellate Defense Division).

Opinion

FLETCHER, Chief Judge:

This case is before us for reconsideration at the instance of the appellant. He has asserted that the recitation of certain facts by Judge Cook in his opinion are not supported by the record of trial nor based on any inference which could reasonably be drawn therefrom. I agree that the record of trial does not support the factual conclusion that Lieutenant Hunter heard the sound of a window being opened prior to his entry into this barracks room. Nevertheless, since such a conclusion did not bear on my decision in this case, my opinion and its logic are unaffected by its correction.

As to the additional question specified by this Court on reconsideration, I have read with great interest the briefs submitted by all parties and the amicus curiae. Some comment is warranted, lest my original opinion be misinterpreted or extrapolated beyond its intended import.

The particular Fourth Amendment issue to be decided in this case is the reasonableness, if any, of the warrantless entry of Lieutenant Hunter, the squadron duty officer, into this barracks room to seek out the activated marihuana and accomplish its immediate deactivation.[1] *See Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Coolidge v. New Hampshire,* 403 U.S. 443, 509–10, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting). If this is decided in favor

---

1. My reading of the record of trial supports this factual conclusion as to the nature and purpose of his entry into the barracks room.

of the Government, my reading of the record of trial leads me to conclude that, under the doctrine of plain view, sufficient facts were apparent within a reasonable time to the squadron duty officer to justify the arrest of the appellant and a search of his person incident thereto. *See Michigan v. Tyler, supra; Coolidge v. New Hampshire, supra* at 465–66, 91 S.Ct. 2022. Accordingly, the admissibility of the challenged evidence discovered during this body search is contingent on the reasonableness of the initial entry.

I believe it is well established that one's constitutional rights are not surrendered upon entering the armed services unless the Constitution expressly [2] or by implication [3] provides for such an exclusion. *See Middendorf v. Henry*, 425 U.S. 25, 50, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) (Powell, J., concurring); *Burns v. Wilson*, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). Yet, I also agree that these constitutional rights require a different application where unique military exigencies are created as a result of the different character of the military community and its mission. *See Middendorf v. Henry, supra; Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The Supreme Court has not had the opportunity [4] to speak directly as to what circumstances in military life would constitutionally justify a different application of the Fourth Amendment [5] to a service member. Nevertheless, that Court has recognized to some degree the seriousness of the problem of drug abuse in the military context as compared to its impact in civilian life. *See Schlesinger v. Councilman*, 420 U.S. 738, 760 n. 34, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). To the extent indicated in my opinion concurring in the result in *United States v. Hessler*, 4 M.J. 303, 308 (C.M.A.), I concur in this assessment of the realities of military life. Moreover, in my mind, the activation of marihuana in the barracks environment in a foreign country poses such a present danger to the military mission as to create an emergency situation justifying immediate action by the squadron duty officer to prevent its continued activation. *See Michigan v. Tyler, supra*, 436 U.S. at 509–10, 98 S.Ct. 1942; *McDonald v. United States*, 335 U.S. 451, 454–55, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Such an entry for this legitimate command purpose is eminently reasonable as concomitant to the constitutional responsibility of the military service to be ready to defend the primary society, especially when the unit is strategically located in the front line of our defenses in foreign countries.[6] I do not find the same situation of emergency to reasonably exist in the situation where dormant marihuana is sought by means of a delayed inspection.[7] *See United States v. Thomas*, 1 M.J. 397, 402 (C.M.A.1976) (Fletcher, C. J., concurring in the result).

However, the scope of the governmental intrusion justified by this military emergency is not unlimited. In view of the delicate line I tread between command readiness and its law enforcement function, it must be limited to entry and a survey of the barracks room to ensure that no marihuana is activated there which can directly threat-

2. *See* U.S.Const. Amend. V.

3. *O'Callahan v. Parker*, 395 U.S. 258, 261, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

4. *E. g., Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

5. *But see Best v. United States*, 184 F.2d 131 (1st Cir. 1950), *cert. denied* 340 U.S. 939, 71 S.Ct. 480, 95 L.Ed. 677 (1951); *Richardson v. Zuppann*, 81 F.Supp. 809 (D.Pa.1949), *aff'd*, 174 F.2d 829 (3d Cir. 1949); *Grewe v. France*, 75 F.Supp. 433 (D.Wis.1948).

6. "[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." *Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). *See also* U.S.Const. art. I, § 8.

7. Compare the Supreme Court's differential treatment of routine administrative inspections of various businesses by a government agent in *Marshall v. Barlow's Inc.*, 436 U.S. 307, 313–14, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), with the entry of firemen in emergency situations as described in part in *Michigan v. Tyler*, 436 U.S. 499, 509–10, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).

en the military mission.[8] Of course, if further facts are discovered in plain view, during the course of such an entry, which establish probable cause to believe some person has committed an offense, such person may be arrested and searched incident thereto. Moreover, if a more extensive search of the barracks room is needed for law enforcement purposes to discover dormant marihuana and is justified by probable cause, a search authorization[9] must be obtained through the most reasonable procedures available at the military installation which are authorized by military law. *See Michigan v. Tyler, supra,* 436 U.S. at 511–12, 98 S.Ct. 1942. The reasonableness of the squadron duty officer's actions in any of the above described circumstances is subject to review at the court-martial and on appeal if its fruits are offered as evidence in a criminal trial.

For these reasons, I find the original entry by the squadron duty officer in this case to be reasonable and lawful.

The decision of the United States Army Court of Military Review is affirmed.

COOK, Judge (concurring):

For the reasons set out in my previous opinions in this case, I join in affirming the decision of the United States Army Court of Military Review. *See United States v. Hessler,* 5 M.J. 277, 278 (C.M.A.1978); *United States v. Hessler,* 4 M.J. 303 (C.M.A. 1978).

PERRY, Judge (dissenting):

For all the reasons set forth in my dissenting opinion when this case was first decided, *United States v. Hessler,* 4 M.J. 303 (C.M.A.1978), I again dissent. A few additional comments are appropriate, however, in view of the ambivalence with which the majority concede constitutional protections to members of our armed services.

First, the majority recognize that one's constitutional rights are not surrendered upon entering the armed services. Then, it is suggested that the different character of the military community and its mission require a different application of these constitutional rights "where unique military exigencies are created." Yet, no unique military exigencies are described in the principal opinion which require a different application of the Fourth Amendment principles at stake in this case. Do the majority intend to suggest that the Fourth Amendment has no application in a military barracks? If not, what is the nature and extent of the different application which the majority envisions? Who decides the different application? What standards do the majority envision for guiding those responsible? Would my Brethren do away with the requirement of probable cause, and the requirement of a search warrant or its counterpart? What exactly does the majority mean by its use of the phrase "unique military exigencies"? Who determines the nature and existence of such an exigency?

While I do not suggest that a military necessity (or military exigency) exception to the warrant requirement would be inappropriate, I do suggest that no exigency recognized in current Fourth Amendment jurisprudence is present in this case. *See Min-*

---

8. In *United States v. Thomas,* 1 M.J. 397, 405 (C.M.A.1976) (Fletcher, C. J., concurring in the result), I sanctioned the authority of the commanding officer to conduct reasonable administrative inspections to ferret out drug abuse in the form of dormant contraband. However, due to the potential for abuse of this command function, I concluded the fruits thereof would be inadmissible in a criminal or quasi criminal proceeding or as a basis for probable cause under the Fourth Amendment. I do not retreat from this position. Nevertheless, in the emergency situation described in the present case, I find less potential for abuse to justify the use of the exclusionary rule. This is because the en-

try is based on a clear and present danger to the military mission and the action taken is in immediate response to the activated drug and limited in scope.

9. In the present case the squadron duty officer's actions after entering this barracks room and after arresting the appellant clearly exceeded the limited scope of the intrusion found reasonable in my opinion. However, the dormant contraband was not discovered as a result of these unreasonable searches and I consider them irrelevant to the resolution of this case.

*cey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *South Dakota v. Opperman,* 428 U.S. 364, 381, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (Powell, J., concurring); *Coolidge v. New Hampshire,* 403 U.S. 443, 481, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Trupiano v. United States,* 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). And, the majority do not even pretend to outline with specificity the exception which they designate in the principal opinion as a "unique military exigency." The Supreme Court teaches: "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"

*Mincey v. Arizona, supra,* 437 U.S. at 390, 98 S.Ct. at 2412.

The majority now concede that no activity inside the appellant's barracks room, of which the duty officer was aware, constituted an exigent circumstance under existing Fourth Amendment concepts. Therefore, absent the existence of circumstances giving rise to a "specifically established and well delineated exception" to the warrant requirement, the duty officer should have first presented the information which led him to believe that marihuana was in the appellant's room to a neutral and detached magistrate in order that such official could have determined the existence of probable cause and could have issued a warrant, if deemed appropriate, specifically describing the place to be searched and the person or thing to be seized. *See United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 391, 92 L.Ed. 468 (1948); *United States v. Ezell,* 6 M.J. 307 (C.M.A.1979).