UNITED STATES, Appellee,

v.

Private First Class Buford DUHART, SSN 257–98–8167, United States Army, Appellant.

CM 438375.

U. S. Army Court of Military Review.

31 Dec. 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Captain Charles E. Trant, JAGC, and Captain Kevin E. O'Brien, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Captain Rolland S. Roup, JAGC, and Captain Robert D. Higginbotham, JAGC, were on the pleadings for appellee.

Before JONES, CLAUSE and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

LEWIS, Judge:

Contrary to his pleas, the appellant was convicted of one specification of wrongful possession of narcotics paraphernalia in violation of a command regulation and Article 92, Uniform Code of Military Justice, and two possession and one sale of heroin specifications in violation of Article 134, UCMJ, 10 U.S.C. §§ 892 and 934, respectively. The sentence approved by the convening authority consisted of a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances, reduction to the grade of E–1, and a reprimand.

Appellant assigns three errors as requiring corrective action. We will discuss the first wherein he asserts that the military judge erred in denying the defense motion to suppress the paraphernalia and heroin seized from appellant's locker.

A recitation of the pertinent facts is essential to the disposition of this search issue. In the course of what has been termed a command-presence walk-through of the barracks after duty hours, Master Sergeant Y, the "Staff Duty Officer", entered appellant's barracks room. Appellant was present with five other personnel. Detecting the very strong smell of what he believed to be burning marijuana or hashish, Sergeant Y did not immediately apprehend those present but continued on his rounds in that building. Immediately thereafter, he called appellant's first sergeant to report that appellant's room contained a pronounced odor that smelled like marijuana smoke. The first sergeant called the company commander, Major W, at his quarters to relay the SDO's information and to request his authorization to conduct a search. In connection with this request, the first sergeant recalled to Major W's attention the fact the appellant and one of the other men assigned to the room were "proven or suspected drug users."[1] The commander

---

1. The first sergeant and company commander already knew that, following an auto accident some three months earlier, civilian authorities (presumably German) furnishing medical treat-

thereupon authorized the search.[2] He then asked, "Do I have to be there?" The first sergeant replied that he did. Pursuant to the first sergeant's return call, Sergeant Y ordered appellant and the remaining occupants of the room to stand in the hallway outside. He secured the windows, closed the door and waited in the hallway for the arrival of the first sergeant and the commander. The first sergeant arrived first and immediately went to the room, opened the door and sniffed the air. He detected the smell of marijuana smoke. Major W arrived, did the same, and then again directed that a search be conducted. He ordered the Charge of Quarters to summon specified officers and sergeants to participate in the search. Two military policemen called to the scene advised against having too many personnel attempt to search the room. The commander narrowed his order to include fewer members. When the search party was assembled, he instructed them to search for any evidence of marijuana, hashish or other contraband and detailed how the search was to be conducted. The party entered the room with the commander and the search commenced. As various items of contraband were uncovered, they were shown to the commander, who directed that they continue searching. The items were then kept under the commander's personal observation and supervision until the conclusion of the search when they were delivered to the military police station by the individuals who discovered them. Major W's role in the enterprise can be summed up in his own words, "They were searching that area under my supervision." [3]

We first observe without the necessity of citation that the Court of Military Appeals and this Court have long applied the Fourth Amendment to the United States Constitution to searches within the military services. Recently, in *United States v. Ezell*, 6 M.J. 307 (C.M.A.1979), the Court of Military Appeals, tracing a lengthy history of U. S. Supreme Court cases, reiterated the constitutional imperative that the official who authorizes a search be neutral and detached. Eschewing any per se disqualification of commanders from the role of magistrate for such purposes, the Court went on in that and several consolidated cases to subject the actions of the authorizing commander to the closest scrutiny, testing for manifestations of a policeman's or prosecutor's attitude. Further, they stated that they would "consider that anyone present during the search is engaged in law enforcement activities . . . . Presence would indicate to [them] that the commander has been engaged in law-enforcement activities throughout his participation in the entire authorization process, except in very extraordinary situations, which [they] will deal with on a case-by-case basis." 6 M.J. at 319.

■ In the instant case, we are confronted with far more than mere presence case. For reasons that will become apparent, this is not such a case.

---

ment found needle marks on appellant's arm. A search of his auto at the same time disclosed drug paraphernalia. A month and a half after that, appellant was observed by the first sergeant to be under the influence of a narcotic (subsequently confirmed by urinalysis). Finally, less than a month after the second incident above and one month prior to the instant search request, appellant was apprehended by Army criminal investigators for possession and sale of heroin (the subject of two of the present specifications).

2. We have considered whether this initial authorization can be separated from the commander's subsequent actions in order to find neutrality and detachment *at that earlier time*. We believe it may be possible in the proper

3. We are fully convinced of this commander's good faith throughout the pre-search and search process. In a similar vein, we appreciate his total candor at trial. Unfortunately, while the requirement for a neutral and detached magistrate in search authorization situations has long existed, it has not been stressed in the military setting until relatively recently. In fact, while Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 152, indicates that persons who authorize searches should be an "impartial" person, it also suggests that he *may* be present at or conduct the search himself.

during the conduct of the search. The search was not to commence until Major W's arrival. It is clear from his actions upon his arrival that he was not fully satisfied with the basis for his original authorization. He personally sought and obtained evidence (his entry into appellant's room to sniff the air) to bolster that which had been furnished previously. This alone violates the precept of *Ezell* "that obtaining information to be used as the basis for requesting authorization to search is a law-enforcement function and involvement in that information-gathering process would disqualify the commander from authorizing the search." 6 M.J. at 319. *See also United States v. Wenzel*, 7 M.J. 95 (C.M.A.1979). Further, however, the commander supervised the execution of the search he had ordered, thereby placing himself squarely within the *Ezell* conclusion that such activities relate back in such manner as to reveal

that he had been engaged in law-enforcement activities all that he had been engaged in law-enforcement activities all along.[4] There is no evidence that rebuts this conclusion.

We therefore find Major W to have improperly merged the role of criminal investigator into what constitutionally should have been a purely judicial decision at the time of his authorization to search given in the barracks.[5] *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). *Compare Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) (where magistrate issued a warrant at the scene but maintained purely judicial decisional role). We further find the fruits (the drug paraphernalia and the heroin) of the search conducted on 28 November 1978 to have been unlawfully seized and improperly received into evidence over

4. We do not believe the *Ezell* court intended to establish a per se rule to the effect that investigative activity on the part of the commander subsequent to an *unequivocal* authorization to search necessarily renders him less than neutral and detached at the time of his judicial act. Rather we believe that they intended to view subsequent activities of that nature as casting such doubt on his earlier judicial temperament as to place a burden on the Government to overcome the inference of lack of original neutrality and detachment. We have no difficulty with this notion. But extending the rule to situations wherein the commander is merely present does not appear to be constitutionally mandated. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 2325, n. 6, 60 L.Ed.2d 920 (1979). We appreciate the fact that a commander who is charged with the direct responsibility for the welfare of his troops (individually as well as collectively) and the physical care and safe-guarding of his barracks cannot remain indifferent to them after he has authorized a search with even the most judicious attitude. We see no basis to infer that a commander's concern in these matters is always oriented toward discipline or law-enforcement and a desire for searches that bear fruit. Most often, commanders are vastly more pleased to learn of a lack of contraband or criminal activity in their barracks than to learn of its discovery. Moreover, since the commander's proper interest and concern remain the same whether he visits the search scene or remains away, to use his presence as a reflection of a policeman's attitude is without support in logic. Accordingly, it is with reluctance

that we adopt *Ezell's* rebuttable presumption that even mere presence of a commander at a search he previously authorized manifests a lack of earlier neutrality and detachment.

A follow-on question where one creates an inference or rebuttable presumption deals with the weight of the evidence required to overcome it. Remembering that the burden is always on the Government to establish the lawfulness of a search by a preponderance of the evidence, the government's burden in this area is directly proportional to the sum of the adverse inference and the evidence bearing on the commander's lack of neutrality and detachment. With no evidence and only an inference arising out of mere presence, the government's burden should be relatively light. When there is added to the inference evidence such as actual participation in a search, the government's burden increases proportionally and may become unsustainable.

5. The Government urges us to apply *Ezell* prospectively and not to this case. Even were we to agree that the "mere presence" inference of *Ezell* burst new upon the legal horizon, the balance of the opinion contained no other clear break with prior precedent. In any event, both the Court of Military Appeals and at least one panel of this Court have already determined that *Ezell* will be applied retroactively. *United States v. Morrison*, 7 M.J. 49 (C.M.A.1979), Summary Disposition *Reconsideration denied*, 7 M.J. 136 (C.M.A.1979) (Court urged not to apply decision retroactively); *United States v. Forbes*, 7 M.J. 969 (A.C.M.R.1979).

appellant's objection.[6] These items constitute the sole evidence in support of Charge I and its specification and Specification 3 of Charge II. Accordingly, we must reverse those findings of guilty, dismiss those specifications and Charge I, and reassess the sentence.

We have carefully considered appellant's other assignments of error and find that they lack merit.

The findings of guilty of Charge I and its specification and Specification 3 of Charge II are set aside and those charges dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for a reprimand, reduction to the grade of E–1, forfeiture of all pay and allowances, confinement at hard labor for ten months and discharge from the service with a bad-conduct discharge.

Senior Judge JONES concurs.

CLAUSE, Judge, dissenting in part:

I disagree with the majority's conclusion that the commander "improperly merged the role of criminal investigator into what constitutionally should have been a purely judicial decision at the time of his authorization to search given in the barracks."

I believe that the language used by the Court of Military Appeals in numerous summary case dispositions following *Ezell* is appropriate in this case:

> The military commander was not per se disqualified to authorize the search. *United States v. Ezell*, 6 M.J. 307 (C.M.A. 1979). Moreover, examination of the record of trial reveals no evidence that the military commander who authorized the search in this case was involved in the competitive enterprise of ferreting out evidence of crime or that he was otherwise predisposed against the appellant. (citations omitted).

6. The objection was actually in the form of a motion to suppress, which is treated as a request for a ruling as to admissibility. Manual

The commander received a call at his quarters from his first sergeant who advised him that six members of his command were in a barracks room where marihuana was apparently being smoked. He authorized a search of the room and then asked if his presence was required and was told by the first sergeant that it was. Upon his arrival he entered the room and satisfied himself that the odor was marihuana. He summoned company officers and NCOs to conduct the search and remained in the area until it was concluded. Military police were also called to the scene. As items of contraband were discovered they were shown to the commander. He did not personally engage in searching or seizing anything. His actions were described as "supervisory." However, during one of his arguments the trial defense counsel characterized his presence as a "mere formality." What must be remembered about both descriptions is that the incident took place before the *Ezell* decision. Nowhere in *Ezell* does the Court state that the mere presence of a commander at the search will automatically invalidate his authorization to search. When the commander who authorized the search is present, certainly those conducting the search will normally consider themselves to be subject to his authority. That was true in this case. What must be examined are the personal actions of the commander that could transform him into a law enforcement official. I do not find his actions in this case to be of such a nature. This case arose in a foreign country as did *United States v. Hessler*, 7 M.J. 9 (C.M.A. 1979). In *Hessler* the odor of activated marihuana in the barracks environment in a foreign country was held to pose such a present danger to the military mission as to create an emergency situation justifying an immediate warrantless entry by the squadron duty officer to prevent its continued activation. The Court cautioned that if a more extensive search was desired a search authorization should be obtained. An authorization was obtained in this case. The

for Courts-Martial, United States, 1969 (Revised edition), paragraph 152.

same situation involving six members of his command would seem to present a sufficient emergency situation to justify the presence of the military commander. Presence under those circumstances should not now cast him in the role of a military investigator ferreting out evidence of a crime. The actions of the commander did not nearly approach those of the commanders concerned in the several cases disposed of in the *Ezell* decision.

In *United States v. Boswell*, decided in the *Ezell* decision, the commander authorized the search and then proceeded to conduct the same by rummaging through a desk, looking under coats, and examining a cupboard, all in the presence of the accused. The Court stated:

> By personally conducting the search and seizing the items whose admission was challenged, Major Moi revealed that he had been engaged in law enforcement activities throughout his participation in the entire authorization process. In addition his attitude resulting from the failure of the earlier search of the accused's room to support action against the accused raised the spectre of bias which must be avoided if the authorizing official is to remain neutral and detached.

As the Court cautioned in *Ezell*, the commander:

> must indeed be neutral and detached concerning the case in which he purports to act. Thus he may not, with respect to that case, authorize searches and seizures of persons or things while at the same time performing investigative or prosecutorial functions.

While I find the commander's presence in the instant case as not disqualifying, I wish to make clear that I am not now encouraging any commander to be present during the execution of a search, regardless of how pure his motives, for certainly after *Ezell* the risk of others imputing evil motives is far too great.

Turning to the question of personal bias or predisposition against the appellant, I find none. Granted the commander had knowledge of the appellant's previous involvement with drugs, but this information alone did not have the effect of disqualifying him. The search was initiated as a result of the charge of quarters smelling activated marihuana in a barracks room containing six members of the command. The commander questioned whether his presence was necessary. He testified that he had no reason to suspect any particular person in the room and directed an equal search of all parts of the room. It is clear from the record that the search was never focused on the appellant.

In *United States v. McCorn*, 7 M.J. 46 (C.M.A.1979) (summary disposition), the Court stated that the "fact that the commander had knowledge of previous drug dealings by the accused" did not change his neutral and detached status. Similarly, in *United States v. McCarthy*, 7 M.J. 42 (C.M.A.1979) (summary disposition), the Court stated that merely because "the commander knew that the appellant was awaiting trial for drug charges; that he was aware of a CID report involving the appellant in other drug offenses; and that several informants had reported him as being involved in drug activit[ies]" was insufficient to change their conclusion as to the commander's neutral and detached status.

For the foregoing reasons I conclude that the commander who authorized the search never ceased to act in a neutral and detached manner. I would affirm all charges and specifications.