UNITED STATES, Appellee,

v.

John L. FIMMANO, Private, U. S. Army, Appellant.

No. 35,152.
CM 433848.

U. S. Court of Military Appeals.

Jan. 21, 1980.

For Appellant: *Captain Joseph W. Moore* (argued); *Colonel Robert B. Clarke, Major Benjamin A. Sims* (on brief); *Colonel Edward S. Adamkewicz, Jr., Major Grifton E. Carden, Captain John E. Caulking.*

For Appellee: *Captain Robert D. Newberry* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Captain Richard A. Kirby* (on brief).

Opinion of the Court

PERRY, Judge: *

In this case, we examine the requirement contained in the Fourth Amendment to the Constitution that "no Warrants shall issue, *but upon probable cause, supported by Oath or affirmation . . .*" (emphasis supplied) and its applicability to searches and seizures in the military services. This Court has previously held that information

---

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.

presented to the official who authorizes searches and seizures need not be under oath or affirmation. *United States v. Penman*, 16 U.S.C.M.A. 67, 36 C.M.R. 223 (1966); *United States v. Hartsook*, 15 U.S. C.M.A. 291, 35 C.M.R. 263 (1965). *See also United States v. King*, 36 C.M.R. 929 (A.F. B.R.1966), *pet. denied* 16 U.S.C.M.A. 656, 36 C.M.R. 541 (1966); *United States v. Wallis*, 44 C.M.R. 586 (A.F.C.M.R.1971), *pet. denied*, 21 U.S.C.M.A. 618, 44 C.M.R. 940 (1971).

■ Those holdings, however, are at variance with the Constitutional mandate that "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation.*" (Emphasis supplied). Accordingly, we hold that with respect to investigations and/or prosecutions contemplated by the Uniform Code of Military Justice, warrants and authorizations to search for and to seize evidence for presentation in courts-martial shall not issue but upon probable cause supported by oath or affirmation.

I

The appellant was convicted by general court-martial of possession of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, imprisonment for a period of one year and reduction to the lowest enlisted grade. The United States Army Court of Military Review has affirmed. We granted review to consider the appellant's contention that evidence presented at his trial which led to his conviction was discovered and seized in violation of the Fourth Amendment to the Constitution of the United States.[1]

1. Specifically, the appellant contends (1) that the facts presented to the commanding officer were insufficient to support a finding of probable cause; (2) that the company commander was *per se* disqualified to authorize the search; and (3) that an oral request and an oral authorization to search are constitutionally impermissible. The contention that the search authorization was based upon insufficient facts to support a finding of probable cause is deemed sufficient to invoke consideration of the requirement 'that probable cause be based upon sworn information. *See* n.9, *supra*.

2. The speakers belonged to Palmer.

II

The record discloses that on April 9, 1975, Captain Collins, the appellant's company commander, overheard Sergeant Wheeler and the First Sergeant discussing a tip which Sergeant Wheeler had received from an informant. The informant, according to Wheeler, had stated that he had seen drugs under a wall locker of a room occupied by the appellant and his roommate Palmer a few days after the preceding pay day which was March 31. Continuing, Wheeler said that his informant, during a second tip that same morning, told him that a "pot party" was held in the same room the night before and that drugs were in a stereo speaker to which access was gained by removing the front of the speaker.[2] Upon overhearing the conversation, Captain Collins asked Sergeant Wheeler for the name of the informant. Wheeler told him that it was Private First Class Trombley. No information was given Captain Collins concerning Trombley's reliability. However, Captain Collins knew Trombley and considered him reliable.[3] Upon the basis of the foregoing information, Captain Collins called Lieutenant Santos and directed him to search the room.[4]

The search was conducted by Lieutenant Santos and a sergeant. When they arrived at the room, Palmer also arrived and was personally searched. Nothing relevant here was found. However, during the search of the room, a "bulb and screen" for hashish were found in Palmer's wall locker; hashish was found in a shirt and a pair of jeans in

3. Captain Collins testified that Trombley had been no trouble in the unit and that he had been chosen to be a truck driver. Trombley had on one occasion been nominated to be soldier of the month. Captain Collins did not personally interview Trombley prior to authorizing the search of the room.

4. The specific language of the order to search does not appear in the record. Lieutenant Santos testified, however, that he was told to search the lockers and stereo speakers, as well as the rest of the room.

the same locker; and a white powder was found in another shirt in the same locker. A search of the speakers revealed narcotics paraphernalia and heroin. These items were seized and delivered to Captain Collins, who gave them to agents of the United States Army Criminal Investigations Division (CID).

During the hearing on the motion to suppress at the appellant's trial, Captain Collins, Lieutenant Santos, Sergeant Wheeler and Private First Class Trombley testified. Material differences appear in the testimony of Trombley and Wheeler.[5] However, the military judge found that Trombley was an untruthful witness and resolved all testimonial differences in Sergeant Wheeler's favor. The judge, therefore, rejected the motion to suppress. He found that the information which Captain Collins had overheard was sufficient to constitute probable cause to believe that narcotic drugs were located within the room occupied by the appellant and Palmer. He also rejected the contention that Wheeler had deliberately falsified the information which he related to the First Sergeant and which was overheard by Captain Collins. The evidence, accordingly, was admitted during the course of the trial.

During the trial of the merits,[6] both Palmer and Trombley testified as witnesses for the prosecution. Palmer testified, *inter alia*, that the heroin discovered in the stereo speaker belonged to the appellant.[7] Trombley stated that he had been in the room several times and that he had seen the appellant remove the front attachment from the stereo speakers and remove something from its interior. Upon the basis of all the evidence, the military judge found the appellant guilty of possession of the heroin found within the stereo speakers.

### III

■ The protections of the Fourth Amendment are applicable to members of the armed services of the United States. *United States v. Ezell,* 6 M.J. 307 (C.M.A. 1979). It is, of course, true that the concept of "military necessity" has led to holdings that the Fourth Amendment was not applicable in some instances because of the exigencies shown to exist. *See United States v. Hessler,* 7 M.J. 9 (C.M.A.1979); *United States v. Hessler,* 4 M.J. 303 (C.M.A.1978) (Fletcher, C. J., concurring in the result); *United States v. Unrue,* 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973); *United States v. Poundstone,* 22 U.S.C.M.A. 277, 46 C.M.R. 277 (1973); *United States v. Kazmierczak,* 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967); *United States v. Brown,* 10 U.S.C.M.A. 482, 28 C.M.R. 48 (1959); *United States v. Gaddis,* 41 C.M.R. 629 (A.C.M.R.1969). However, where exigent circumstances which invoke the concept of military necessity are not shown to exist, "the Fourth Amendment applies with equal force within the military as it does in the civilian community." *United States v. Ezell, supra* at 315; *United States v. Grosskreutz,* 5 M.J. 344 (C.M.A.1978); *United States v. Harris,* 5 M.J. 44 (C.M.A.1978); *United States v. Roberts,* 2 M.J. 31 (C.M.A.1976); *Courtney v. Williams,* 1 M.J. 267 (C.M.A.1976); *United*

---

5. Sergeant Wheeler testified that Trombley had talked to him on two prior occasions and that he, in turn, had relayed the information to the First Sergeant. But Wheeler acknowledged that, while Trombley had told him that he, Trombley, had been in the appellant's room for "pot parties," this information was not imparted to the First Sergeant or to Captain Collins until after the search. On the other hand, Trombley testified that while it was true that he had been at a pot party in the appellant's room, he denied ever mentioning this to Sergeant Wheeler.

6. The trial commenced as a joint trial of Palmer and the appellant. However, because of antag-

onistic defenses, the military judge severed Palmer's trial and prosecution of the appellant proceeded. After disposal of the motion to suppress during the appellant's trial, Palmer was separately tried and convicted by the same judge.

7. Upon cross-examination Palmer acknowledged that the speakers belonged to him; that the contraband found in the speakers was enclosed in Marlboro cigarette packages; that he (Palmer) smoked Marlboro cigarettes; and that the appellant did not smoke. Palmer also acknowledged that all the narcotic items found within his locker and clothing belonged to him.

States v. Jordan, 1 M.J. 334 (C.M.A.1976); United States v. Kinane, 1 M.J. 309 (C.M.A. 1976); United States v. Guerette, 23 U.S.C. M.A. 281, 49 C.M.R. 530 (1975); United States v. Staggs, 23 U.S.C.M.A. 111, 48 C.M.R. 672 (1974); United States v. Unrue, supra; United States v. Glenn, 22 U.S.C. M.A. 295, 46 C.M.R. 295 (1973); United States v. Simmons, 22 U.S.C.M.A. 288, 46 C.M.R. 288 (1973); United States v. Poundstone, supra; United States v. Sam, 22 U.S. C.M.A. 124, 46 C.M.R. 124 (1973); United States v. Lange, 15 U.S.C.M.A. 486, 35 C.M.R. 458 (1965); United States v. Hartsook, supra; United States v. Davenport, 14 U.S.C.M.A. 152, 33 C.M.R. 364 (1963); United States v. Battista, 14 U.S.C.M.A. 70, 33 C.M.R. 282 (1963); United States v. Ness, 13 U.S.C.M.A. 18, 32 C.M.R. 18 (1962).

Under paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition), the "commanding officer [or] officer in charge, having control over the place where the property or person searched is situated or found," may, upon probable cause, authorize searches and seizures of evidence.[8] This Court has held that, with respect to the finding of probable cause and of authorizing searches, the commanding officer stands in the same position as his civilian counterpart, the federal magistrate, and that when exercising the search authority conferred by paragraph 152 of the Manual, he must proceed with a "judicial" rath-

er than a "police" attitude. United States v. Ezell, supra.

This Court has held, however, that information upon which the finding of probable cause is based is not required to be given under oath. See United States v. Penman, supra, and United States v. Hartsook, supra. See also United States v. King, supra; United States v. Wallis, supra; United States v. McCarthy, 1 M.J. 993 (N.C.M.R. 1976). It is this holding with which the appellant now takes issue.[9]

### IV

The Fourth Amendment provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[10]

The Supreme Court teaches that "[t]he warrant clause of the Fourth Amendment is not dead language. Rather, it has been 'a valued part of our constitutional law for decades, and it has determined the result in scores . . . of cases in courts all over this country.' " United States v. United

---

8. Paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition) provides, inter alia, that:

[a legal search is a] search of any of the following three kinds which has been authorized upon probable cause by a commanding officer, including an officer in charge, having control over the place where the property or person searched is situated or found or, if that place is not under military control, having control over persons subject to military law or the law of war in that place:

(1) A search of property owned, used, or occupied by, or in the possession of, a person subject to military law or the law of war, the property being situated in a military installation, encampment or vessel or some other place under military control or situated in occupied territory or a foreign country.

(2) A search of the person of anyone subject to military law or the law of war who is found in any such place, territory, or country.

(3) A search of military property of the United States, or of property of nonappropriated fund activities of an armed force of the United States.

9. The appellant's contention that the search authorization in this case was issued without probable cause or written application is sufficiently broad to invoke our consideration of the validity of this Court's prior holdings with respect to the requirement that the finding of probable cause be based upon oath or affirmation. Moreover, during the oral arguments before us, counsel for the parties fully argued the question of whether this provision of the Fourth Amendment is binding. Accordingly, we hold that the question is properly before this Court for consideration.

10. U.S.Const. Amend. IV.

*States District Court,* 407 U.S. 297, 315, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972). The command that a warrant should issue only upon probable cause directs "that baseless searches shall not" be made. *Id.* at 316. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Moreover, "[u]nder the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation." *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933). *Accord, Aguilar v. Texas, supra; Spinelli v. United States, supra; Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Therefore, no warrant can issue lawfully in the absence of a showing of probable cause supported by oath or affirmation. *See United States v. Harrick,* 582 F.2d 329 (4th Cir. 1978); *United States v. Acosta,* 501 F.2d 1330 (5th Cir. 1974);[11] *United States v. Wroblewski,* 105 F.2d 444 (7th Cir. 1939). Indeed "[a] bare unsworn assertion for which the informing officer takes no moral or legal responsibility is . . . not sufficient." *Frazier v. Roberts,* 441 F.2d 1224, 1228 (8th Cir. 1971). *See Miller v. Sigler,* 353 F.2d 424 (8th Cir. 1965), *cert. denied* 384 U.S. 980, 86 S.Ct. 1879, 16 L.Ed.2d 690 (1966).

Moreover, civilian federal courts impose the requirement that the supporting affidavits which contain the information upon which probable cause is based and the warrant itself be in writing.[12] Explaining the rationale for the requirement, the United States Court of Appeals for the Fifth Circuit has observed that the requirement that all evidence be included as a part of the affidavit ensures: (1) "that the magistrate has all the information necessary to arrive at a decision," and (2) "that the record is preserved for later review in such a way that new information, either newly discov-ered or remembered, cannot be used to validate a warrant after it has been issued." *United States v. Acosta,* 501 F.2d at 1334. *See also Aguilar v. Texas, supra,* and *Spinelli v. United States, supra.* In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Court underscored the importance of the affidavit upon which the finding of probable cause is based when it held that a defendant may challenge deliberately falsified statements included within the affidavit. Said the Court:[13]

> It is established law, *see Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. [11] 13, 78 L.Ed. 159 (1933); *Giordenello v. United States,* 357 U.S. 480, 485–486, 78 S.Ct. [1245] 1249–1250, 2 L.Ed.2d 1503 (1958); *Aguilar v. Texas,* 378 U.S. 108, 114–115, 84 S.Ct. [1509] 1513–1514, 12 L.Ed.2d 723 (1964), that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. If an informant's tip is the source of information, the affidavit must recite "some of the underlying circumstances from which the informant concluded" that relevant evidence might be discovered, and "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . ., was 'credible' or his information was 'reliable.'" *Id.,* at 114, 84 S.Ct. [1509] at 1514, 12 L.Ed.2d 723. Because it is the magistrate who must determine independently whether there is probable cause, *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. [367] 368–369, 92 L.Ed. 436 (1948); *Jones v. United States,* 362 U.S. 257, 270–271, 80 S.Ct. [725] 735–736, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960), it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment.

---

11. On rehearing en banc the Court affirmed the District Court by an equally divided vote on the search issue. 509 F.2d 539 (1975).

12. *See* Fed.R.Crim.P. 41.

13. *Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 2682, 57 L.Ed.2d 667 (1978).

As the above authorities indicate, it is axiomatic that under the Fourth Amendment, the finding of probable cause must be based upon information supported by oath or affirmation. Where the information is not given under oath or affirmation, probable cause may not lawfully be found based thereon. This Court's prior holdings that probable cause can be found upon information which is not supported by oath or affirmation are, therefore, at variance with the Fourth Amendment's command that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." No justification for a different rule in the military appears in any of this Court's prior holdings, nor has any justification been urged by the Government here. Indeed, the most frequent objection to the procedural requirements here mentioned (that often there is not enough time) is met by the recognized exceptions to the warrant requirement permitting warrantless searches under certain exigent circumstances (see *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)) and by the military necessity concept. *See United States v. Hessler, supra; United States v. Unrue, supra.* That many commanding officers contemplated by paragraph 152 of the Manual are not empowered to administer oaths should not deter the process. We assume the power of the President to clothe the officials who exercise the warrant authority of the Fourth Amendment with requisite authority to administer oaths.

Accordingly, we hold that the Fourth Amendment's requirement that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation" applies with equal force to cases contemplated for prosecution under the Uniform Code of Military Justice, as in the federal civilian courts.

We also commend for consideration by proper authority the procedure set forth in Rule 41(c), Federal Rules of Criminal Procedure, for making and preserving a record of the application for search authority and the issuance of the authority itself. Such a procedure would insure that the information supporting a finding of probable cause and the search authorization itself will be made a matter of record which will facilitate review by the trial court and all reviewing courts when necessary to a determination of issues arising from searches and seizures authorized upon the basis of such information. *See United States v. Acosta, supra.* Indeed, such a record may constitute the only manner in which the finding of probable cause may be later shown to have been established and by which the scope of the authorization may later be determined. *See Franks v. Delaware, supra.*

V

Applying the above principles to this case, it is readily apparent that the information upon which Captain Collins acted when he directed a search of the appellant's room was not given under oath or affirmation. Sergeant Wheeler's statement concerning information given him by Private Trombley was a bare unsworn assertion for which he took no moral or legal responsibility and was, therefore, not sufficient. *Nathanson v. United States, supra; Frazier v. Roberts, supra.*

As the authorities herein cited will attest, the requirement of oath or affirmation in support of the information on which the finding of probable cause is based is not new. However, this Court's prior case law has never imposed the requirement on cases contemplated by the Uniform Code of Military Justice. Therefore, in the interest of the orderly administration of justice, the requirement we announce today shall apply only to all searches conducted after the date on which this opinion is published.

Thus, the decision of the United States Army Court of Military Review is affirmed.

FLETCHER, Chief Judge (concurring):

I agree with the majority opinion of Judge Perry, but I write to address the other separate opinion herein, lest it mislead the reader in some important respects as to what the Court does today.

Judge Cook bemoans what he perceives as a departure herein from "two centuries of military practice and nearly three decades of decision in this Court to hold that an authorization to search must be based on information provided under an oath or affirmation." I suggest, instead, that what this Court finally has done is to examine the dictates of the Constitution of the United States in this one regard and to measure it against the realities of the requirements of military life and the military mission, as opposed to certain talismanic myths, and to find military practice wanting.

The real point of departure between the majority herein and the dissent, apparent from a close reading of each opinion, is that the former begins with the proposition that the protections guaranteed *all* citizens of this Nation by the Constitution are not surrendered *en masse* upon the entry into the armed services. As we only recently had occasion to observe:[1]

It is now settled that the protections of the Fourth Amendment and, indeed, the entire Bill of Rights, are applicable to the men and women serving in the military services of the United States unless expressly or by necessary implication they are made inapplicable. *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); *United States v. Jacoby,* 11 U.S.C. M.A. 428, 29 C.M.R. 244 (1960). When a party urges that a different rule obtains in the military than in the civilian sector, the burden is upon that party to show the need for such a variation. *Courtney v. Williams,* 1 M.J. 267 (C.M.A.1976). Thus, in *United States v. Priest,* 21 U.S.C.M.A. 564, 45 C.M.R. 338 (1972), this Court held that the protections of the First Amendment are of different application in the military than within the civilian commu-

nity. *See also Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. Gray,* 20 U.S.C.M.A. 63, 42 C.M.R. 255 (1970). And in *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), the Supreme Court held that the protections of the Sixth Amendment do not apply at summary courts-martial because, in the view of the Court, summary courts-martial are not criminal but disciplinary proceedings which involve minor military offenses having no counterpart in the civilian community.

But neither this Court nor the United States Supreme Court has ever held that the protection of the Fourth Amendment does not apply to servicepersons, save in those instances where the concept of military necessity was held to warrant inapplicability. Indeed, the opposite is true.

Now, the dissent, I would anticipate, would protest this analysis of our fundamental difference, but I submit that a careful examination of that opinion is revealing. In doing so, I am struck that the theme of his opinion is to suggest reasons why an oath requirement is not *necessary* in the military, as opposed to discussing why it is not *practicable.* In other words, I suggest that his opinion *sub silentio* begins with the proposition that an oath is not extrinsically required and moves to inquiring whether it is desirable, whereas the majority begins with the proposition that the oath *is* extrinsically required[2] and moves to inquiring whether, for some peculiarly military reason, it is unworkable. In short, Judge Cook's opinion reverses what is the clear law of this Court in determining applicability to the military of constitutional protections—a case of the cart pulling the horse.

---

1. *United States v. Ezell,* 6 M.J. 307, 313 (C.M.A. 1979) (footnotes omitted). *Accord, United States v. Hessler,* 7 M.J. 9, 10 (C.M.A.1979); *id.* at 11 (Perry, J., dissenting). *See Parker v. Levy,* 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

2. U.S.Const. Amend. IV, prescribes:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated and *no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,* and particularly describing the place to be searched, and the persons or things to be seized. (Emphasis added.)
The "warrant," of course, has its military counterpart in a search "authorization." *Compare* Rule 315(b)(1) *with* Rule 315(b)(2) of the proposed Military Rules of Evidence.

Apart from exposing the dissent's subliminal radical deviation from the long-followed and well-established conceptual law of this Court and of the United States Supreme Court, I am moved to address briefly some specific portions of that separate opinion. First, Judge Cook contends that the "omission of an oath or affirmation [in the military] has been explicitly upheld as constitutional by federal civilian courts." In support thereof, the Judge quotes a rather lengthy passage from *Wallis v. O'Kier,* 491 F.2d 1323 (10th Cir. 1974), *cert. denied* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974). Thereafter, he cites three additional federal court cases, all out of various District Courts.[3] Unfortunately, an actual reading of these cases discloses that they do not lend quite the strength of support for his position that Judge Cook would have his readers believe.

As is apparent from the quoted provision from *Wallis,* that opinion freely intermingles discussion of the requirement for an oath or affirmation with that of the requirement for a written warrant. In fact, the sentence emphasized by the dissent—which remarks on the impracticability or impossibility of requiring "the formalizing of the probable cause by the affixing of a seal to a paper writing"—quite obviously concerns the *written warrant,* while the sentence preceding it indicates that it *ought* to concern the *oath or affirmation.* As confused as the opinion and its analysis is, it is rather infirm authority.

The other three cases are of little more help. In *United States v. Burrow,* 396 F.Supp. 890 (D.Md.1975), the court engaged in an extensive discussion of the facts and circumstances of that case peculiar to the military and its mission, and concluded:

> Although the Court in different circumstances might find, even on a military base, that a search based upon probable cause unsupported by oath or affirmation was unreasonable, it does find *under the facts and circumstances of the present case, wherein exigent circumstances exist* affecting the commanding officer's interest in maintaining the security, order and discipline of his post that the search was properly and duly authorized and was reasonable within the meaning of the Fourth Amendment.

*United States v. Burrow, supra* at 903 (emphasis added).

Obviously, this holding is a far cry from a blanket dispensation of the military from following the "oath or affirmation" dictate of the Fourth Amendment.

In *Lebron v. Secretary of the Air Force,* 392 F.Supp. 219 (S.D.N.Y.1975), *aff'd.,* 535 F.2d 1242 (2d Cir. 1975), *cert. denied* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976), the court, responding to the appellant's contention that the warrant at issue was invalid because it was based on the unsworn statements of a narcotics agent, simply stated:

> Authority to search may be granted upon oral and unsworn statements of a special agent under military law.

*Id.* at 221 (footnote omitted). The opinion contained no analysis of the appellant's contention, and by citing two of this Court's earlier cases[4] as the sole authority for this bald conclusory statement, the court appeared simply to have deferred to this Court's jurisprudence on the issue.

---

**3.** Additionally, in footnote 3, Judge Cook cites two other federal cases as having "affirmed the procedure prescribed for searches set forth in the Manual for Courts-Martial"—*United States v. Grisby,* 335 F.2d 652 (4th Cir. 1964), and *United States v. Head,* 416 F.Supp. 840 (S.D.N.Y.1976), *aff'd,* 546 F.2d 6 (2d Cir. 1976). I notice, however, that neither makes any *mention* of the "oath or affirmation" requirement of the Fourth Amendment. Instead, *Grisby* is concerned entirely with a written warrant versus an oral authorization, and *Head,* in pertinent part, reflects on the fact that the authorization there was not based on a written application and on the fact that the authorization itself was not reduced to writing until after the search had been conducted. Obviously, then, unlike the present case, the Manual procedure "affirmed" in these cases does not bear on the black-letter requirements of the Fourth Amendment. *See* n. 2, *supra.*

**4.** *United States v. McFarland,* 19 U.S.C.M.A. 356, 41 C.M.R. 356 (1970); *United States v. Hartsook,* 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965).

Finally, in *United States v. Rogers,* 388 F.Supp. 298 (E.D.Va.1975), the court did approve, after calling it an "extremely close question," [5] the finding of probable cause not based on an oath or affirmation. It did so by simply concluding, without any analysis, that under the facts of that case the procedure "was adequate to protect Rogers from an unreasonable search and seizure." *Id.* at 304 (footnote omitted).

What is alarming about the three cases which do lend conclusionary support for Judge Cook's position is that they do so without any analysis of whether a departure from the constitutional dictate is necessary. As mentioned earlier, it is the traditional law of this and of the Supreme Court that the constitutional protections afforded American citizens accompany those citizens into the armed services unless they are inapplicable expressly or by necessary implication. It is readily ascertainable that the Drafters exempted *no* class of citizens from the Fourth Amendment's charge that the probable cause must be based on an oath or affirmation. *Compare* U.S.Const. Amend. IV *with* amend. V. And none of the cases—and the same may be said of the dissent—suggests anything about the realities of military life and of the military mission which makes it impracticable for a commanding officer, a military judge, or a military magistrate to utilize the ten or twenty seconds necessary to place the applicant for the authorization under oath.

The dissent's citation of *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), and of *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), for the assertion that the Supreme Court has sanctioned "governmental action not allowable by the Constitution in the civil community" is of no help to the broader claim, for neither case stands for the proposition that military criminal procedure may deviate from the Constitution without a compelling military need therefor. Simply observing "It's the military," does not automatically vitiate precious constitutional rights. Indeed, in *Parker,* the Supreme

Court used a standard for determining impermissible vagueness of a military statute which differed from the standard used for a similar inquiry of a civilian statute only "[b]ecause of the factors differentiating military society from the civilian society." *Parker v. Levy, supra* at 756, 94 S.Ct. at 2562. In the absence of such factors bearing on the "oath or affirmation" dictate of the Fourth Amendment, that prescription must be applied in the military with the full force with which it is applied in the civilian sector of our society. *See United States v. Hessler,* 7 M.J. 9 (C.M.A.1979); *United States v. Ezell,* 6 M.J. 307 (C.M.A.1979).

Finally, I must make some comment on Judge Cook's treatment of that portion of the majority opinion wherein Fed.R.Crim.P. 41(c) is *commended* to the military services for their consideration. The Judge takes the majority to task for this suggestion, claiming, in essence, that it is unworkable. But he seems unaware of the provisions of Fed.R.Crim.P. 41(c)(2), for the general procedure therein outlined would seem to meet expediently the specific situations Judge Cook sets forth. Even then, Rule 41(c) applies only when obtaining a warrant is feasible; in an ultimate exigency situation implied by Judge Cook, not only would a *writing* not be obligatory, but the *authorization itself* would be unnecessary. In any event, it is not the ruling of the Court that Rule 41(c) does apply; rather, the majority simply commends its general procedures to the military departments for their consideration, consonant with the spirit of Article 36(a), UCMJ, 10 U.S.C. § 836(a), which "expresses a preference for federal procedure" in the absence of a contrary Manual provision. *United States v. Slubowski,* 7 M.J. 461, 463 (C.M.A.1979).

Additionally, the dissent's contention that requiring the application for a search authorization and the authorization itself to be in writing is simply "a convenience for the judiciary" is far afield. As long as criminal defendants have the constitutional right to "go behind" the warrant application and the warrant itself to test the basis

---

5. *United States v. Rogers,* 388 F.Supp. 298, 304 (E.D.Va.1975).

of the former and the scope of the latter, see *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the writing is much more than a convenience for the judiciary. In fact, one of the cases cited by Judge Cook himself—*United States v. Rogers, supra*—expressly states to the contrary: "This [a written summation of the basis of the probable cause determination] is for the protection of the rights of the individual who is the subject of the search." *Id.* at 303.

But, returning to the initial point of my separate opinion, these specific flaws in Judge Cook's opinion pale in comparison with the drastic departure he takes from the accepted conceptual law concerning applicability to military members of constitutional protections. Judge Cook is chagrined because he perceives that the majority today "wipes out two centuries of military practice and nearly three decades of decision in this Court." But all the majority does is follow the traditional analysis of applicability of constitutional rights and to reach a conclusion different from that previously espoused. What the dissenting judge does is far more serious, for his approach would constitute a fundamental change in the settled analytical technique of this Court and of the United States Supreme Court.

COOK, Judge (concurring in the result):

Today, the majority wipes out two centuries of military practice and nearly three decades of decision in this Court to hold that an authorization to search must be based on information provided under an oath or affirmation. I cannot participate in that expungement. I cannot do so because, in my opinion, substantial differences between the military and civilian communities sanction a different application of the dictates of the Fourth Amendment.

Only six months ago, the Court unanimously reaffirmed the authority of a commander to authorize a search, notwithstanding he has "many functions that are properly classified as law enforcement in nature," and, therefore, of a kind that would be disqualifying in the civilian community. *United States v. Ezell,* 6 M.J. 307, 317 (C.M.A.1979). The Court also unanimously agreed that the commander could take into account his own prior knowledge of facts relevant to the existence of probable cause. *Id.* at 320, 326, 331. As the principal opinion in *Ezell* suggested, such prior knowledge is integral to, and inseparable from, "the traditional command function of maintaining . . . [the] troops in a state of readiness to perform any mission required of them." *Id.* at 320. This tradition has no counterpart in the civilian community where the magistrate would more likely than not be totally uninformed until he is provided with the information requisite to the issuance of a warrant. *Cf. Furtado v. Bishop,* 604 F.2d 80 (1st Cir. 1979). Further, the absence of an oath or affirmation in the civilian community would leave the applicant who lies to the magistrate unamenable to a criminal sanction,[1] but the knowing declaration by a military person of a falsehood, in an official matter, has always constituted a military offense.[2]

Paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition), prescribes the military procedure for authorization of a search. No oath or affirmation is required. *See United States v. Hood,* 7 M.J. 128, 130 n. 2 (C.M.A.1979); *United States v. McFarland,* 19 U.S.C.M.A. 356, 41 C.M.R. 356 (1970); *United States v. Penman,* 16 U.S.C.M.A. 67, 36 C.M.R. 223 (1966); *United States v. Martinez,* 16 U.S.C.M.A. 40, 36 C.M.R. 196 (1966); *United States v. Hartsook,* 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965). The omission of an oath or affirmation has been explicitly upheld as constitutional by federal civilian courts. *Wallis v. O'Kier,* 491 F.2d 1323, 1324–25 (10th Cir. 1974), *cert. denied,* 419 U.S. 901,

---

1. *See* 18 U.S.C. §§ 1621 and 1623; *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979).

2. *See* Winthrop, Military Law and Precedents 713, 722, 732 (2d ed. 1920 Reprint); *United States v. Gomes,* 3 U.S.C.M.A. 232, 11 C.M.R. 232 (1953).

95 S.Ct. 185, 42 L.Ed.2d 147 (1974), is typical. There, the Court of Appeals said:

In the exercise of the granted powers, the President promulgated the Manual for Courts-Martial. In this extensive Manual it is set forth that a search may be made pursuant to a warrant issued by the commanding officer of a military installation upon probable cause. Manual for Courts-Martial, ¶ 152. The manual does not provide for the probable cause to be supported by oath or affirmation as does the Fourth Amendment to the Constitution. There seems to be no doubt but that an express provision of the military law that probable cause could be shown by oral statements would be valid. Any draftsman of a rule providing for probable cause as an incident to the issuance of a search warrant would be consciously aware of the Fourth Amendment provision. It is apparent that the omission of a reference to oath or affirmation was deliberate and intentional. There are reasons for such an inference. *Although this was probably not such a case, many situations have existed and will exist in military commands where the formalizing of the probable cause by the affixing of a seal to a paper writing would be impracticable or impossible.* Such a construction has been placed upon the provision by the military courts. The search made pursuant to a warrant issued, upon probable cause not supported by oath or affirmation, by the commanding officer of the military installation, where the search is to be made of property in the possession or under the control of a person in the command of the officer issuing the warrant, as in the case here present, is a valid search. [Emphasis added.]

*Accord, United States v. Burrow,* 396 F.Supp. 890 (D.Md.1975); *Lebron v. Secretary of the Air Force,* 392 F.Supp. 219, 221 (S.D.N.Y.1975), *aff'd,* 535 F.2d 1242 (2d Cir.

1975), *cert. denied,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976); *United States v. Rogers,* 388 F.Supp. 298 (E.D.Va.1975).[3]

The civilian cases cited in Judge Perry's opinion deal with the requirement of an oath in an application for a civilian warrant; not one is contrary to the cases I have listed, which deal expressly with a military authorization to search. No civilian case involving a military warrant that is contrary to our prior decisions is cited in the defense brief. I have carefully examined the concurring opinion written by Chief Judge Fletcher and have concluded that a reply in kind would not add anything to the body of military law. My own research has uncovered no such case contrary to those I have cited.

Time and again, the United States Supreme Court has remarked that particular governmental action not allowable by the Constitution in the civil community is nonetheless permissible in the armed services. *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). *See also Curry v. Secretary of the Army,* 194 U.S.App.D.C. 66, 71, 595 F.2d 873, 878 (D.C.Cir. 1979). In the *Levy* case, the Supreme Court upheld the constitutionality of articles of the Uniform Code proscribing conduct by members of the military that would not have passed muster for criminal statutes in the civilian community. 417 U.S. at 756, 94 S.Ct. 2547. I have no doubt that the military practice in issue is constitutional.

Having condemned the existing military rule, the majority "commend" to military authorities Fed.R.Crim.P. 41(c). Not only is that rule inapplicable to the military by its terms, but it is wholly unsuited to its circumstances. The rule requires writings, a written affidavit and a written transcript of any oral testimony taken in supplementation of an affidavit. No great imagina-

---

**3.** Other cases have affirmed the procedure prescribed for searches set forth in the Manual for Courts-Martial. *United States v. Grisby,* 335 F.2d 652, 654–55 (4th Cir. 1964) (citing para. 152, Manual for Courts-Martial, United States, 1951); *United States v. Head,* 416 F.Supp. 840, 844 (S.D.N.Y.1976) (citing para. 152, Manual for Courts-Martial, United States, 1969 (Revised edition)), *aff'd,* 546 F.2d 6 (2d Cir. 1976).

tion is required to perceive the countless occasions in the military when the applicant for the search will be at a place distant from that of the person empowered to authorize a search, with a radio or telephone the only feasible means of communications between them. Such occasions can be expected to arise, especially in time of war, at the same time that transportation is severely restricted or even nonexistent. This Court has indeed indicated a preference for a writing, but not as a prerequisite to the validity of the authority to search. Rather, the writing was regarded simply as a means to facilitate review of probable cause, in the event of a later attack on the legality of the authorization—a convenience for the judiciary, not a limitation upon it or the executive branch. *See United States v. McFarland, supra* at 358 n. 1, 41 C.M.R. at 358 n. 1, and *United States v. Martinez, supra.* I also disagree, therefore, with the majority's indiscriminate commendation of Rule 41(c).

I would affirm the decision of the Court of Military Review on the merits.