UNITED STATES, Appellee,

v.

Alan R. FOUST, Specialist Four, U.S. Army, Appellant.

No. 45369.

CM 441906.

U.S. Court of Military Appeals.

Dec. 19, 1983.

For Appellant: *Major Lawrence F. Klar, Captain Gunther O. Carrle* (on brief); *Major Robert C. Rhodes.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Major Michael R. Smythers, Captain Andrew D. Stewart* (on brief).

*Opinion of the Court*

COOK, Judge:

Contrary to his pleas, the accused was convicted of possession and transfer of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The adjudged and approved sentence extends to a bad-conduct discharge, confinement at hard labor for 12 months, forfeiture of $493.00 pay per month for 12 months, and reduction to the grade of private (E–1). The Army Court of Military Review affirmed the findings and sentence. 14 M.J. 830 (1982).

We granted the accused's petition for review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY FAILING TO GRANT HIS MOTION TO SUPPRESS EVIDENCE.

Finding no error, we affirm the decision of the Court of Military Review.

Private Daryl M. Mataya, an undercover military policeman who was working with the Joint Drug Suppression Team at Fort Wainwright, Alaska, went to the on-base dwelling of Specialist Fox, who earlier had agreed to sell him marihuana. Together, Fox and Mataya went to the accused's apartment to obtain the drug. According to Mataya, the accused took seven one-ounce bags of marihuana from a large bag that was hidden behind the couch. He gave the small bags to Fox and replaced the large bag behind the couch. Fox and Mata-

ya returned to Fox's apartment, and Mataya then departed ostensibly to get the money with which to make the purchase, but also to contact Investigator Copen, who was to participate in the sale. Together Mataya and Copen returned to Fox's apartment, where Copen bought one bag of the substance and Mataya bought the remaining six bags. Copen left Mataya at the apartment and field tested the marihuana. When it tested positively, Copen and Special Agents Clark and Allbright went to the Post Commander to obtain authorization to search Fox's apartment. After being briefed about the transaction, the commander gave the agents an oral authorization to search. Thereafter, Clark and Allbright entered Fox's apartment and apprehended Fox and Mataya. A search of the apartment disclosed the six bags which were later tested and found to contain marihuana. A short time later, Mataya, Clark, Allbright, and Copen again went to see the Post Commander, this time to request authority to search the accused's apartment.[1] After he was briefed by Mataya and the others, the Post Commander gave another oral authorization to search. The search of accused's apartment revealed only certain paraphernalia and bags containing trace amounts of marihuana.[2]

At trial, accused's civilian defense counsel moved to suppress the fruits of the searches on the grounds of the informant's (Mataya's) lack of reliability. Later, he expanded

his motion to include "anything that makes that a bad search ___." Our examination of the record convinces us of the wisdom of appellate defense counsel's selection of the issue that the failure to administer an oath to the agents seeking authority constituted the legal defect in the search.[3]

The basis for appellate defense counsel's contention is contained in paragraph 14–3 of Army Regulation 27–10, "Legal Services—Military Justice" (C. 20, August 15, 1980), which states:

> The procedures for the issuance of search and seizure authorizations are contained in Rules 315 and 316 of the Military Rules of evidence [sic]. Authorizations to search and seize may be issued on the basis of an affidavit or oral statement made under oath.... Authorizations to search and seize may be issued in writing or orally.[4]

The Government counters that Change 20 to AR 27–10 was published to reflect this Court's decision in *United States v. Fimmano,* 8 M.J. 197 (C.M.A.1980), *pet. for recon. not granted,* 9 M.J. 256 (C.M.A.1980), and that our later holding in *United States v. Stuckey,* 10 M.J. 347 (C.M.A.1981), overruled that decision.

In *United States v. Stuckey, supra,* we held that the Fourth Amendment's requirement that warrants could only be issued upon probable cause was not relevant in a military situation, since the commander was

---

1. Mataya told the Post Commander "that Foust had hid several more bags of marihuana behind the couch." He also told him about the previous transfer of seven bags from the accused to Fox. The commander considered this information as being part of a continuing transaction with the first "operation."

2. Fox's wife testified that after the search of their quarters she called the accused and told him that her "husband had been arrested, and . . . asked him to come over." This call might explain the paucity of evidence subsequently found during the search of the accused's quarters.

3. We have no doubt that sufficient proof of the existence of probable cause with regard to both searches was conveyed to the commander.

4. The use of the verb "may" instead of "will" could indicate that the requirement for "an

affidavit or oral statement made under oath" is not mandatory. However, paragraph 5–9 of the same regulation provides the authority for commanders to administer "the required oaths to persons presenting information" in support of requests for authority to search. After *United States v. Fimmano,* 8 M.J. 197 (C.M.A.1980), *pet. for recon. not granted,* 9 M.J. 256 (C.M.A. 1980), was overruled by *United States v. Stuckey,* 10 M.J. 347 (C.M.A.1981), the Army changed the paragraph to conform to the latter. *See* para. 9–8, AR 27–10 (September 1, 1982). Mil.R.Evid. 315 makes no mention of any requirement that the information presented be under oath or affirmation, or that it be in writing. It also provides that the authorization may be "written or oral." Mil.R.Evid. 315(b)(1).

not a magistrate and he did not "issue warrants." Instead, "[t]he commander's power to authorize searches of places and persons under his control exists . . . because it complies with the Fourth Amendment's basic norm of reasonableness." 10 M.J. at 361. We, therefore, concluded that

> to require . . . that a military commander base probable cause for searches and seizures only on sworn testimony may present formidable administrative difficulties and lead to many suppression hearings hinging solely on whether a commander administered an oath to a witness in the proper form. The gain in reliability from administration of the oath is simply not great enough to dictate the conclusion that it is unreasonable *per se* for a commander to find probable cause *from unsworn information.*

*Id.* at 364 (footnote omitted).

However, the fact remains that at the time the authorizations were given in this case, Change 20 was in effect. What we now must decide is the effect of violating that regulation on the legality of the search authorizations.

■ We have no difficulty in sustaining the search of Fox's apartment. In *United States v. Miller,* 13 M.J. 75, 77 (C.M.A.1982), we noted:

> The United States Supreme Court has set forth the following rules for challenging the legality of searches: The person seeking to suppress the evidence produced by the search bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area being searched.

5. In *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), the Supreme Court stated:
   This Court discussed the doctrine of "standing to invoke the [Fourth Amendment] exclusionary rule" in some detail last Term. *Rakas v. Illinois,* 439 U.S. 128, 138 [99 S.Ct. 421, 428, 58 L.Ed.2d 387] (1978). We reaffirmed the established rule that a court may not exclude evidence under the Fourth

Since the accused had no "legitimate expectation of privacy" as to the marihuana given to Fox, he may not, at this time, contest the legality of that search. *Id., citing Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *see also Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *United States v. Sanford,* 12 M.J. 170 (C.M.A.1981).[5]

As to the search of the accused's own dwelling, there is no question about the accused's legitimate right to challenge the legality of the search. We faced a somewhat similar situation in *United States v. Dillard,* 8 M.J. 213 (C.M.A.1980). There, the theatre supplement to AR 190–22 provided that "[a]uthorization to conduct searches and seizures . . . except those searches authorized without a search warrant, will be executed in writing." *Id.* The search at issue was conducted pursuant to an oral search authorization. This Court held that the failure to follow such a regulation required exclusion of the evidence found during the search.

Since that time, we have had occasion to examine the applicability of the exclusionary rule to violations of service regulations. In *United States v. McGraner,* 13 M.J. 408 (C.M.A.1982), we concluded

> that not every regulation which deals with the administration of justice or with investigative procedures is designed to create rights enforceable by the accused when he is brought to trial. This point was emphasized by the Supreme Court in *United States v. Caceres,* 440 U.S. 741 [99 S.Ct. 1465, 59 L.Ed.2d 733], . . . (1979). Distinguishing cases where enforcement of regulations had been granted pursuant

Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights. [Citations omitted.] And the defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party. [Citations omitted.]
*Id.* 447 U.S. at 731, 100 S.Ct. at 2444.

to the Administrative Procedure Act, ..., the [Supreme] Court emphasized: "But this is not an APA case, and the remedy sought is not invalidation of the agency action. Rather, we are dealing with a criminal prosecution in which respondent seeks judicial enforcement of the agency regulations by means of the exclusionary rule. That rule has primarily rested on the judgment that the importance of deterring police conduct that may invade the constitutional rights of individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial. In view of our conclusion that none of respondent's constitutional rights has been violated here, either by the actual recording or by the agency violation of its own regulations, our precedents enforcing the exclusionary rule to deter constitutional violations provide no support for the rule's application in this case."

*Id.* at 415., *quoting* 440 U.S. at 754–55, 99 S.Ct. at 1473; *see also United States v. Holsworth,* 7 M.J. 184 (C.M.A.1979).

█ In the instant case, there is no question that probable cause existed for the search, and there is no question that the Post Commander had authority to authorize the search.[6] There is no constitutional requirement for searches in the military community to be granted only upon sworn affidavits or testimony. *United States v. Stuckey, supra; Lebron v. Secretary,* 392 F.Supp. 219 (S.D.N.Y.1975), *aff'd.* 535 F.2d 1242 (2d Cir.1975). Consequently, we find no compelling reason to impose the exclusionary rule to suppress the evidence discovered during the search.[7] The importance of deterring unconstitutional police conduct does not outweigh the importance of securing the conviction of the accused. *United States v. Caceres, supra.*

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.

---

**6.** The commander testified that the fact that Mataya's information corroborated what he had already been told made Mataya a more reliable informant and affected his decision "not to put Mataya or the other agents under oath.... [I]t would have been merely a cosmetic gesture as far as I was concerned. I had no reason, whatsoever, to disbelieve anything they were telling me."

**7.** The evidence secured from the search of the accused's dwelling contributed little, if anything, to the case against him.