UNITED STATES, Appellee,

v.

Private First Class David L. WIXON,
557–29–3610, United States
Army, Appellant.

CM 448174.

U.S. Army Court of Military Review.

27 Oct. 1986.

For Appellant: Major Joel D. Miller, JAGC, Major Eric T. Franzen, JAGC, Captain Annamary Sullivan, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Captain Carlton L. Jackson, JAGC (on brief).

Before MARDEN, PAULEY and De GIULIO, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Judge:

Appellant was tried by a military judge sitting as a general court-martial. Contrary to his pleas, he was found guilty of two specifications of larceny of government property in violation of Article 121, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. § 921 (1982) and one specification of forgery by making the signature on a Department of the Army (DA) Form 2765–1, Request for Issue or Turn-In, in violation of Article 123, UCMJ, 10 U.S.C. § 923 (1982). He was sentenced to a dishonorable discharge, con-

finement for three years, forfeiture of $200.00 pay per month for 36 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

Appellant alleges the following errors:

## I

THE STAFF JUDGE ADVOCATE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO SERVE HIS RESPONSE TO THE DEFENSE COUNSEL'S POST-TRIAL SUBMISSION.

## II

THE MILITARY JUDGE ERRED IN NOT FINDING SPECIFICATIONS 2 [LARCENY OF FIFTY "30–ROUND" M–16 MAGAZINES] AND 3 [LARCENY OF 2500 BULL'S–EYE TARGETS] OF CHARGE II MULTIPLICIOUS FOR FINDINGS PURPOSES.

## III

THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE FINDINGS OF GUILTY TO CHARGE III AND ITS SPECIFICATION (FORGERY).

## IV

THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS EVIDENCE FOUND AS A RESULT OF AN ILLEGAL SEARCH.

## V

THE CONDITIONS OF APPELLANT'S PRETRIAL CONFINEMENT CONSTITUTED ILLEGAL PRETRIAL CONFINEMENT.

We disagree with the alleged errors and affirm.

## I. Facts.

Appellant was a clerk involved in the ordering, issue and "turn-in" of property for his unit. In May 1985, eight spray paint units were delivered to the unit. A check of appropriate documents disclosed that these units had not been ordered. Appellant was told to turn in the items immediately. Appellant falsely made the signature of the receiving authority on a DA Form 2765–1, Request for Issue or Turn-In, for "turn-in" of the spray paint units, and took six of them to his off-post trailer home. Appellant used this receipt as evidence of "turn-in" of the items. A check by superiors revealed that the items had not been "turned-in." Upon confrontation, appellant admitted taking the items, accompanied authorities to his trailer home and consented to the search of his home where the spray paint units were recovered. Subsequently, criminal investigation command agents [hereinafter referred to as CID] received an anonymous telephone call indicating that appellant had other items of military property hidden under the floor of his trailer. When asked if the trailer could be searched, appellant requested a lawyer prior to giving consent.

After returning to his trailer home that evening, appellant requested permission from a neighbor, who was also the "maintenance man" of a vacant home in the neighborhood, to store property in that vacant house. Although the record is unclear whether permission was obtained, the military judge nevertheless found that the "maintenance man" gave appellant permission to store the items in the vacant house. During that same evening, the CID received telephone calls indicating that the appellant and others were moving boxes of government property from the trailer to the vacant house and that they were setting off explosives from time to time. CID agents went to the vacant house where they met the local police. The house appeared to be abandoned. They looked in the uncovered windows and observed boxes which appeared to have national stock numbers on them, "OD colored stuff" and some M–16 magazines. The items appeared to be government property. A local policeman entered the unlocked house, observed some of the property, and exited the house.

The owner of the vacant house was contacted and consented to a search. Among other property recovered were M–16 magazines and bull's-eye targets. A check of documents at the unit disclosed that the targets and the M–16 magazines had been ordered on different dates. Unit records also reflected that the M–16 magazines had not been received and that ten boxes of targets had been falsely ordered as "nuts and bolts." Records falsely indicated that the targets and magazines had been shipped to the unit, but not received.

After trial, appellant's defense counsel submitted a comment to the recommendation of the staff judge advocate [hereinafter referred to as SJA] alleging, for the first time, that conditions of his pretrial confinement at a contract civilian confinement facility were illegal. Appellant alleged that he had to work with convicted prisoners, had to speak with visitors through a screen barrier, had no recreation facilities, had no training programs, had no recreation equipment or television, could not wear his uniform, was required to wear a prison uniform, had to share a razor with other prisoners and had no access to a library or physical recreation facilities. Appellant alleges these conditions are in violation of Army Regulation 190–47, Military Police: The United States Army Correctional System, (1 Oct. 1978) (Cl, 1 Nov. 1980) [hereinafter cited as AR 190–47]. The SJA responded to the submission of appellant's counsel by a written disagreement containing a legal discussion of the issue and provided that comment to the convening authority, but did not serve it upon appellant's defense counsel.

II. Failure to Serve the SJA Response and Pretrial Confinement.

Because they are closely related, we will dispose of the issues of failure to serve the SJA Response and the legality of pretrial confinement together. We find the issue of failure to serve the SJA Response can be resolved by examination of the Manual for Courts-Martial, United States, 1984 [hereinafter cited as M.C.M., 1984].

■ Manual for Courts-Martial, 1984, Rule for Courts-Martial [hereinafter cited as R.C.M.] 1106(f)(7), provides:

*New matter in addendum to recommendation.* The staff judge advocate or legal officer may supplement the recommendation after counsel for the accused has been served with the recommendation and given an opportunity to comment. When new matter is introduced after counsel for the accused has examined the recommendation, however, counsel for the accused must be served with the new matter and given a further opportunity to comment.

The discussion following this provision is helpful. R.C.M. 1106(f)(7) discussion explains,

"New matter" includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed. *"New matter" does not ordinarily include any discussion by the staff judge advocate or legal officer of the correctness of the initial defense comment on the recommendation.* (Emphasis supplied.)

We find that the Staff Judge Advocate's Response is a discussion of the correctness of the initial defense comment on the recommendation and therefore is not new matter within the meaning of R.C.M. 1006(f)(7). Consequently, the SJA was not required to serve his comment upon appellant's defense counsel.

■ Appellant alleges that the conditions of his pretrial confinement were illegal due to violations of the provisions of AR 190–47 and UCMJ art. 13, 10 U.S.C. § 813.[1] He maintains he is entitled to

---

1. It is noted that defense counsel requested at trial that the military judge release appellant from pretrial confinement. The gist of the motion was that a basis for pretrial confinement did not exist. The military judge found the confinement was not illegal but released appellant because of " ... the passage of time ... the lack of material—threats materializing, the fact that he has a family, wife and children in the vicinity...." Conditions of illegal pretrial confinement were not raised by appellant at trial.

three-for-one credit. *See United States v. Suzuki,* 14 M.J. 491 (CMA 1983). We believe the disposition of this issue is controlled by *United States v. Palmiter,* 20 M.J. 90 (C.M.A.1985). There Judge Cox stated, "Henceforth, in my opinion, the question to be resolved is not solely whether a pretrial confinee was commingled with sentenced prisoners, but, instead, whether any condition of his confinement was intended to be punishment." *Palmiter,* 20 M.J. at 95. We find no evidence here that any condition of pretrial confinement was intended to be punishment. Further, it is noted that appellant chose to raise this issue after trial. As stated in *Palmiter,* 20 M.J. at 97:

> If, after the initial hearing and determination by the military magistrate, a confinee believes that he is being punished by conditions in the confinement facility, he should apply for relief from these conditions to the magistrate who initially approved his pretrial confinement. Should he be denied relief by that magistrate, the confinee should appeal to the convening authority or to the military judge depending on the state of the proceedings at the time. It is possible that resort to the extraordinary-writ jurisdiction of the appellate courts would be appropriate in extreme cases. (Footnote omitted.) Just as with the decision to continue pretrial confinement, review of the conditions of such confinement should be an ongoing process to limit the duration of any violation which might arise following the initial incarceration. *The failure to raise this issue while undergoing pretrial confinement will be strong evidence that the confinee was not illegally punished prior to trial.* (Emphasis added.)

Appellant's failure to raise the issue of illegal conditions of pretrial confinement before the magistrate or before the military judge, coupled with a lack of showing that punishment was intended, convinces us that the appellant's conditions of confinement were not illegal.

We believe that this failure is of particular sig-

## III. Multiplicity.

■ Appellant alleges that the specifications of larceny of the targets and larceny of the M–16 magazines are multiplicious for findings because they were alleged as stolen at the same time, from the same victim, and were found at the same location. The evidence of record establishes that the items were requisitioned on different dates. At least some targets were ordered falsely as "nuts and bolts." All items were recorded as shipped but not received. It is not unreasonable to presume that the targets were received at different times because they were ordered at different times. They were immediately removed from the unit; otherwise, they would have been seen in the unit. Further, it is unlikely that such a large quantity of items were removed from the unit at one time. At least on one occasion, appellant was observed in possession of some of the targets. We find, as a matter of fact, that the targets and the M–16 magazines were stolen at different times. Although appellant had the opportunity to reconsider and abandon his criminal course of conduct, he did not do so. We hold, therefore, that the specifications are not multiplicious. *See United States v. Abendschein,* 19 M.J. 619, 621 (A.C.M.R.1984), *petition denied,* 21 M.J. 84 (C.M.A.1985).

## IV. Forgery.

■ Appellant alleges that the evidence is insufficient as a matter of law to support a finding of guilty of forgery. In support of his position appellant maintains that the DA Form 2765–1 did not have the legal efficacy to operate to the legal harm of the United States. We disagree. It has long been held that a receipt for the payment of money may be the subject of forgery. *United States v. Davis,* 31 C.M.R. 162, 167 (C.M.A.1961). We believe, in the instant case, that the DA Form 2765–1, Request for Issue or Turn-In, was a receipt for the turn-in of the spray paint units and is similar to a receipt for money. The document

nificance under these circumstances.

was used by appellant to convince proper authority that the listed property was in possession of the United States, when in fact the appellant had stolen the property. It affected a legal right of the United States: the right to possession of its property. *See generally United States v. Strand,* 20 C.M.R. 13, 18–20 (C.M.A.1955). We find, therefore, that the DA Form 2765–1, Request for Issue or Turn-In, does have legal efficacy and can be the proper subject of a charge of forgery.

## V. The Search.

■■■ Lastly, appellant alleges that the military judge should have suppressed evidence found in the vacant house because the search was illegal. Again, we disagree. The ultimate question is whether there has been an official invasion of a legitimate expectation of privacy. *United States v. Wisniewski,* 21 M.J. 370, 372 (C.M.A.1986). Here, the items were in plain view. The police officers viewed the stolen items through a window without coverings in an apparently abandoned house. Appellant did not own the house or hold a possessory interest in it and the owner of the house consented to the search that revealed the stolen property. Under these circumstances, we find appellant had no reasonable expectation of privacy from visual intrusions in the house and in the objects observed, since they could be viewed with ease through the uncovered windows. *See Wisniewski,* 21 M.J. 370, 373. *See also United States v. Foust,* 17 M.J. 85, 87 (C.M.A.1983) (no legitimate expectation of privacy in the apartment of another person); *United States v. Miller,* 13 M.J. 75 (C.M.A.1982) (where accused left his property in another person's unattended, unsecured automobile, the accused assumes the risk that the owner might consent to someone searching the vehicle; and, by doing so, the accused abandoned any legitimate expectation of privacy). We hold the search was not unlawful.

We also find that the allegations of error personally asserted by the appellant are without merit. Accordingly, the findings of guilty and the sentence are affirmed.

Judge PAULEY concurs.

Senior Judge MARDEN took no part in the decision of this case.